UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH ANN ESPINOSA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | No.  2:19-cv-1789-KJN<br><br>ORDER OF SUMMARY JUDGMENT<br><br>(ECF No. 24) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.[1]  In her summary judgment motion, plaintiff contends the Administrative Law Judge erred in assessing the severity of one of her impairments, formulating her residual functional capacity, and rejecting her subjective-symptom testimony.  The Commissioner opposes plaintiff's motion.  Upon consideration of the record and briefing, the court DENIES plaintiff's motion for summary judgment, and AFFIRMS the final decision of the Commissioner.

///

---

[1] This action was referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 302(c)(15).  Both parties consented to proceed before a United States Magistrate Judge, and the case was reassigned to the undersigned for all purposes. (ECF Nos. 6, 9, 21.)

I.      **BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS**[2]

On May 31, 2016, plaintiff protectively applied for SSI and DIB. (Administrative Transcript ("AT") 34, 258-71.) In both applications, plaintiff alleged a disability onset date of December 31, 2006—which she later amended to December 31, 2012. (AT 48-49, 259, 268.) Plaintiff's applications were denied initially and again upon reconsideration. (AT 144-45, 164-65.) Plaintiff, aided by an attorney, sought review of these denials with an Administrative Law Judge ("ALJ"). (AT 200-01.) The ALJ held a hearing on November 15, 2017, where plaintiff testified about her conditions, and where a Vocational Expert ("VE") testified about plaintiff's ability to work. (AT 44-75.)

On July 25, 2018, the ALJ issued a decision determining that plaintiff was not disabled from that onset date forward. (AT 26-36.) As an initial matter, the ALJ determined that plaintiff met the insured status requirements through December 31, 2012. (AT 28.) At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since her amended onset date of December 31, 2012. (Id.) At step two, the ALJ determined plaintiff had the following severe

---

[2] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1). SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a). Where the standards for each benefits system align, the court cites only the DIB statutes and regulations.

Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(a). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

impairments: diabetes mellitus and neuropathy. (Id.) In doing so, the ALJ found "nonsevere" plaintiff's medically determinable impairment of diabetic retinopathy, among others. (AT 29.) At step three, the ALJ determined plaintiff's impairments did not meet or medically equal the severity of an impairment listed in Appendix 1. (AT 31) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1).

The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform "medium" work, with the following limitations:

> lifting, carrying, pushing and/or pulling 50 pounds occasionally and 25 pounds frequently; sitting six hours out of an eight hour workday; standing and/or walking six hours out of an eight hour workday; frequently climbing ramps and stairs, but occasionally climbing ladders, ropes, and scaffolds; frequent balancing, stooping, kneeling, crouching, and crawling; and frequently exposure to unprotected heights, exposed mechanical parts, and other similar hazards.

(AT 31.)

At step four, based on Vocational Expert ("VE") testimony, the ALJ found that plaintiff was capable of performing her past relevant work as a hospital housekeeper. (AT 36.) Thus, the ALJ determined plaintiff was not disabled. (Id.) The Appeals Council denied plaintiff's request for review on May 23, 2019 (AT 12), making the ALJ's decision the final decision of the Commissioner. Plaintiff then filed this action requesting judicial review of the Commissioner's final decision; plaintiff's motion for summary judgment has been fully briefed. (ECF Nos. 1, 24, 27, 30.)

## II. LEGAL STANDARD

In reviewing the agency's decision, a district court should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017). Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Id. The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation."

Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, the court may not reverse the ALJ's decision on account of harmless error.  Buck, 869 F.3d at 1048.

## III. ISSUES PRESENTED

Plaintiff argues the ALJ erred by (1) finding plaintiff's diabetic retinopathy a non-severe impairment at step two, (2) assigning an RFC of "medium" work that did not account for plaintiff's fatigue and weakness, and (3) rejecting plaintiff's subjective symptoms testimony without sufficient reasons.[3]  (ECF No. 24 at 16-32.)  Plaintiff does not specify what relief she seeks, were the court to grant summary judgment in her favor.

## IV. DISCUSSION

### A. Step Two Severity Assessment

Legal Standard

Under the Commissioner's regulations, an impairment or combination of impairments is deemed to be severe at step two if it "significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 404.1522(a).  In addition to capacity for physical functions, the ability to do basic work activities includes "[c]apacities for seeing, hearing, and speaking."  Id. § 404.1522(b)(2).  An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (internal quotation marks omitted).

"Step two is merely a threshold determination meant to screen out weak claims."  Buck v. Berryhill, 869 F.3d 1040, 1048-49 (9th Cir. 2017); see Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) ("the step-two inquiry is a de minimis screening device to dispose of groundless claims" (internal citations and quotation marks omitted)).  "It is not meant to identify the impairments that should be taken into account when determining the RFC."  Buck, 869 F.3d at 1048-49.  "[T]he severity regulation is to do no 'more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a

---

[3] The court grants plaintiff's request to submit a brief that exceeds the standard page limit.  (ECF No. 24 at 1.)

person from working.'" SSR 85-28 (quoting <u>Baeder v. Heckler</u>, No. 84-5663 (3d Cir. July 24, 1985)).

Analysis

Plaintiff devotes most of her brief to the argument that the ALJ erred at step two by determining that her diabetic retinopathy was not a severe impairment. (ECF No. 24 at 16-26.) Plaintiff argues that this error stems from the ALJ's view of plaintiff's diabetic retinopathy purely as a matter of visual acuity, without acknowledging how other accompanying factors limited plaintiff's work-related abilities. (<u>See</u> <u>id.</u> at 18.) The Commissioner argues that substantial evidence supports the ALJ's step two assessment of plaintiff's eye condition, given the lack of evidence that plaintiff's diabetic retinopathy caused any work-related limitations; and he also argues that any error at this step was harmless. (ECF No. 27 at 7-12.) The court agrees with the Commissioner on both fronts.

Here, the ALJ decided step two in plaintiff's favor, determining that plaintiff had the severe impairments of diabetes mellitus and neuropathy, while finding non-severe plaintiff's other impairments—including her diabetic retinopathy. (AT 28-31.) Accordingly, plaintiff's disability claim survived the step two screening stage, and the ALJ proceeded to consider all of her alleged impairments—severe and not—at subsequent steps of the evaluation. In finding plaintiff's eye condition not severe at step two, the ALJ indeed focused primarily on evidence of plaintiff's ability to see and to read. (AT 29.) Plaintiff argues that this focus impermissibly ignored the other record evidence of her right eye being infected with conjunctivitis, for which she sought emergency care; her eye pain and watering; and light sensitivity and headaches. (ECF No. 24 at 18.)

While the ALJ did not discuss all of the symptoms accompanying plaintiff's retinopathy within the step two analysis section of the decision, the ALJ clearly did not "ignore" these symptoms. Later in the decision, the ALJ explicitly noted plaintiff's conjunctivitis, pain, eye hemorrhaging, headaches, and light sensitivity. (AT 32, 33, 34-35.) The ALJ simply concluded that this eye condition and its symptoms "ha[d] no more than a minimal effect on [plaintiff's] ability to work." <u>Webb</u>, 433 F.3d at 686. Substantial evidence supports this conclusion.

The record firmly establishes plaintiff's diagnosis of diabetic retinopathy, which as plaintiff emphasizes in her brief *can* certainly impede a person's ability to work if it progresses. But plaintiff provided no evidence that her retinopathy *did in fact* affect her ability to work, even minimally. In all of the many records plaintiff identifies documenting the retinopathy diagnosis, none includes an assessment of plaintiff's resulting contemporaneous limitations. See Ducey v. Saul, 2020 WL 5231494, at *4 (E.D. Cal. Sept. 2, 2020) (collecting cases stating that "mere existence of an impairment . . . does not establish severity"); Holaday v. Colvin, 2016 WL 880971, at *12 (E.D. Cal. Mar. 8, 2016) ("The mere fact that plaintiff was diagnosed with such conditions is, by itself, insufficient to demonstrate that they were 'severe' for step two purposes."). Plaintiff's explanations to this court of what limitations her documented eye condition *can* cause through numerous citations to online medical sources, however reputable, cannot make up for this deficit.

First, some of the symptoms plaintiff complains the ALJ overlooked were relatively short-lived. For instance, although plaintiff suffered a bout of bacterial conjunctivitis and inflammation (acute anterior uveitis) in her right eye in March 2016 (AT 754-56, 757-60)—and took herself to the emergency room once early on when it was not improving (AT 1139-42), the medical records indicate that the infection and pain had resolved by the following month (AT 744 (assessing both conjunctiva as "white and quiet"), 747 (plaintiff reporting "[n]o pain at all")).[4]

The closest the medical records come to establishing a work-related limitation is a warning by plaintiff's long-term ophthalmologist Dr. Jeffrey Ing at their most recent vision appointment in the record, on October 16, 2017, that if her "moderate disease . . . continues she *could* lose driving and reading vision." (AT 1222 (emphasis added).) At that same appointment, Dr. Ing also noted that her right eye edema had "improved" and her left eye edema had "[s]lightly improved." (Id.) At each of plaintiff's appointments spanning from March 2016 to October 2017, Dr. Ing expressed the need to monitor plaintiff's retinas closely and stressed the importance

---

[4] On examination during an initial April 22, 2016 appointment, plaintiff's new primary care physician noted "conjunctival injection bilaterally." (AT 899.) But all of the subsequent medical examinations plaintiff identifies—from July 2016 through October 2017—show normal conjunctiva.

of plaintiff controlling her diabetes.  (AT 745, 749, 1085, 1101, 1106, 1222.) (See also AT 1088 (stating that plaintiff's retinopathy—while "severe" and "chronic"—"can improve if her diabetes improves, otherwise the retinopathy will reflect her diabetic status").)  This supports the ALJ's finding that the retinopathy was "being managed medically, and should be amenable to proper control."  (AT 29.)  The fact that her condition carries a potential for vision loss—an understandably frightening prospect (AT 66)—does not undermine the ALJ's conclusion that it has not *yet* more than minimally affected plaintiff's ability to work.  And the ALJ explained in detail her reasons for rejecting as aberrational the one vision exam that reported a right eye corrected visual acuity of 20/200 (AT 1088), compared to the numerous vision tests before and after that showed right eye corrected visual acuities of no less than 20/80 and mostly at 20/40. (AT 743-44, 755, 1083, 1099, 1104-05, 1220-21.)

At the hearing, plaintiff testified that she was currently experiencing bilateral eye "hemorrhaging," eye swelling and leaking, frequent headaches, and "blurry" vision for anything not close to her.  (AT 59-63.)  The ALJ need not have credited this subjective symptoms testimony as satisfying step two.  See Ducey, 2020 WL 5231494, at *4 (plaintiff's own statement of symptoms alone is insufficient to establish severity).  But even assuming some error, the court sees no prejudice to plaintiff, given that the ALJ decided step two in plaintiff's favor and went on to consider these symptoms and plaintiff's retinopathy when formulating the RFC.  (AT 32, 33, 34-35.)  See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (failure to identify impairment as severe at step two is harmless where the ALJ considers any limitations posed by the impairment at step four).  That the RFC the ALJ ultimately assigned did not include accommodations or exceptions related to plaintiff's eye condition and surrounding symptoms does not mean—as plaintiff argues—that there was harmful error.  It simply reflects the ALJ's reasonable view that the record evidence did not establish any work-related limitations arising from plaintiff's present condition.  See Buck, 869 F.3d at 1049 ("The RFC . . . should be exactly the same regardless of whether certain impairments are considered 'severe' or not.").  The court finds no reversible error in the ALJ's step two findings.

///

**B. Hypothetical Question to VE**

Legal Standard

An ALJ may pose a range of hypothetical questions to a vocational expert ("VE"), based on alternate interpretations of the evidence. However, the hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC determination, must account for all of the limitations and restrictions of the particular claimant that are supported by substantial evidence in the record as a whole. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) ("If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." (citation and quotation marks omitted)). However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006).

Analysis

As a continuation of her step-two argument, plaintiff contends in a single paragraph that the ALJ harmfully erred by failing to account for her diabetic retinopathy in the RFC presented to the VE at the hearing. (ECF No. 24 at 26) Specifically, plaintiff objects that the RFC presented in the hypothetical to the VE (and indeed the ultimate RFC) contained "no vision limitations regarding pain, sensitivity to light, [or] chronic oozing infection, specific to diabetic retinopathy." (Id.) As discussed above, the ALJ did not err by omitting from the RFC—or the VE hypothetical—limitations related to these symptoms, given that substantial evidence supported her view that these symptoms did not *limit* plaintiff's work-related abilities. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that [claimant] had claimed, but failed to prove.").

///
///
///

**C. The ALJ's RFC Finding**

Plaintiff next argues that substantial evidence does not support the ALJ's "medium" RFC because the ALJ ignored evidence that "the combination of [plaintiff's] multiple impairments render her fatigued and weakened, such that she would not have the strength to sustain the rigorous work requirements of medium work . . . ." (ECF No. 24 at 27.) In aid of this argument, plaintiff cites a handful of scattered medical records from soon after her amended alleged onset date of December 31, 2012—and several preceding that date.

First, the ALJ was not required to discuss the cited medical records predating December 31, 2012, especially given the August 2014 uncontested denial of her prior disability claim covering the same period. (AT 34 (ALJ describing as "not relevant" medical records prior to onset date); see Green v. Berryhill, 731 F. App'x 596, 598 (9th Cir. 2018) (stating that "[t]he ALJ was not required to discuss earlier evidence that was not probative of [plaintiff]'s condition during the relevant time period for this application"). Primarily, plaintiff points to various medical records from late 2013 and mid-2015 purportedly documenting her "fatigue due to diabetes." (ECF No. 24 at 27.) But these records in fact show only that in August 2013, plaintiff had to be hospitalized after not taking her diabetes medication for two months (AT 653); that in September 2013 she sought care for chest tightness and heaviness that was attributed to panic attacks (AT 638, 670-71); that in December 2013, she was diagnosed with poorly controlled diabetes with diabetic retinopathy (AT 719); and that in May 2015 she was admitted to the emergency room after battling a viral or bacterial infection for a week (AT 940-41). The fact that some of these treatment notes recorded plaintiff's complaints of tiredness and weakness is unsurprising, given that most of these records arose when treating plaintiff's acute conditions. And none of these notations suggest that plaintiff was limited for any extended duration by her reported weakness.

Plaintiff also argues that the ALJ overlooked evidence of plaintiff's limited mobility but cites only a single period-relevant record of plaintiff's emergency room treatment for swollen feet in October 2015. (ECF No. 24 at 28 (citing AT 1010); ECF No. 30 at 5.) Citing this one assessment of plaintiff's "mild" "situational edema" of the feet—for which she described no pain

or distress, and was discharged with a "steady gait"—does nothing to undermine the ALJ's otherwise supported RFC finding.[5]  (AT 1008, 1010-12.)

In sum, plaintiff fails to show that substantial evidence does not support the ALJ's assignment of a medium RFC.

**D. Plaintiff's Subjective-Symptom Testimony**

Legal Standard

In evaluating a claimant's report of his or her symptoms, the Ninth Circuit has established the following two-step analysis:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)).  A claimant's statements of subjective symptoms alone is insufficient grounds to establish disability. 20 C.F.R § 404.1529(a).  If an ALJ was required to believe every allegation of pain or impairment, disability benefits would run afoul of the Social Security Act

///

---

[5] Plaintiff also argues in a footnote in her reply brief that the RFC should have accounted for plaintiff's light sensitivity and eye pain.  (See ECF No. 30 at 4 n.3 (citing 2011 and 2012 emergency room visits for left eye conjunctivitis and chest pain).)  To the extent this argument is adequately raised, it is rejected for the same reasons discussed above:  the ALJ considered the evidence of these symptoms and simply found them nonlimiting.

In addition, the court does not address plaintiff's argument—raised for the first time in her reply brief—that the RFC improperly omitted the standing and walking limitations to which she testified at the hearing.  (See id. at 5.)

1  and its purpose.  See Treichler v. Comm'r of SSA, 775 F.3d 1090, 1106 (9th Cir. 2014).

2  　　　　　The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony
3  must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not
4  arbitrarily discredit a claimant's testimony."  Brown-Hunter v. Colvin, 806 F.3d 487, 483 (9th
5  Cir. 2015) (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)).  This requires the
6  ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible
7  and . . . explain what evidence undermines that testimony."  Treichler, 775 F.3d at 1102.
8  Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's
9  subjective symptom testimony include: the effectiveness of or noncompliance with a prescribed
10 regime of medical treatment, inconsistencies between a claimant's testimony and their conduct
11 (including daily activities), and whether the alleged symptoms are consistent with the medical
12 evidence of record.  See Tommasetti, 533 F.3d at 1040; Lingenfelter v. Astrue, 504 F.3d 1028,
13 1040 (9th Cir. 2007).  A lack of corroborating, objective medical evidence alone is insufficient
14 grounds to discount a claimant's subjective symptoms; however, it is a factor the ALJ may
15 consider.  20 C.F.R § 404.1529(c)(2); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

16 　　　　　Analysis

17 　　　　　Here, the ALJ first summarized plaintiff's written subjective symptom reports and
18 testimony regarding her symptoms and daily activities provided at the November 2017 hearing.
19 (AT 32-33.)  Before reviewing the objective medical evidence (AT 34-35), the ALJ included the
20 oft-repeated statement that while plaintiff's symptoms could reasonably be expected to cause the
21 alleged symptoms, her statements "concerning the intensity, persistence and limiting effects of
22 these symptoms are not entirely consistent with the medical evidence and other evidence in the
23 record."  (AT 34.)  Although the ALJ did not clearly enumerate her reasons for discounting the
24 severity of plaintiff's self-reported symptoms in a single neatly defined portion of the decision,
25 the undersigned finds that the ALJ nevertheless provided sufficiently identifiable "specific, clear
26 and convincing reasons" for only partially crediting plaintiff's testimony.

27 　　　　　First, the ALJ explained how the medical evidence did not support the severity of
28 plaintiff's allegations.  (AT 34.)  Second, the ALJ noted that plaintiff had received only "routine

and conservative treatment" for her diabetes and neuropathy, including medications, diagnostic testing, and physical examinations. (AT 34, 35.) Third, the ALJ relied on plaintiff's "extensive history of noncompliance with follow-up," as reported in an August 2017 primary care treatment note describing her as a "no show" for 12 months since July 2016. (AT 34, 35 (citing AT 1216).) The ALJ explained that the proximity of this noncompliance to the alleged onset date suggested that plaintiff's impairments were not as severe as alleged "given the lack of consistent treatment." (AT 35.) Finally, the ALJ noted plaintiff's "somewhat normal" level of daily activities as inconsistent with disabling limitations. (AT 32-33.) For these reasons, the ALJ found plaintiff's subjective complaints "partially credible." (AT 35.) The court concludes that the ALJ's analysis satisfies the Ninth Circuit's demanding standard. See Tommasetti, 533 F.3d at 1039-40 (that claimant underwent conservative treatment undermines allegations of disabling impairment); Carmickle v. Comm'r, 533 F.3d 1155, 1161 (9th Cir. 2008) (noting that though a lack of medical evidence "cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider").

## V.    CONCLUSION

In sum, the court concludes that the ALJ's decision was free from prejudicial legal error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 24) is DENIED and the final decision of the Commissioner is AFFIRMED; and
2. The Clerk of Court shall enter judgment for defendant, and close this case.

Dated: January 28, 2021

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

espi.1789